UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK SAM, *on behalf of himself and all others similarly situated*,

        Plaintiff,

   v.

MIDLAND CREDIT MANAGEMENT, INC., *et al.*,

        Defendants.

---

15-CV-1029-LJV-HKS
DECISION & ORDER

On July 29, 2014, the plaintiff, Mark Sam, commenced a putative class action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  *See* Docket Item 1, 14-CV-611.  That case was consolidated into this matter on September 11, 2019.  *See* Docket Item 66.  On April 28, 2020, Sam filed a second amended complaint against the defendants, Cohen & Slamowitz[1] and three Cohen & Slamowitz attorneys (collectively, "C&S"[2]) and Midland Credit Management, Inc., Midland Funding, LLC, and Encore Capital Group, Inc. (collectively, the "Midland entities").  Docket Item 81.

---

[1] Cohen & Slamowitz is now known as Selip & Stylianou, LLP.  *See* Docket Item 81 at 1.

[2] Sam generally alleges that the three individual attorneys are "liable for the acts of C&S," but he does not claim that the attorneys themselves engaged in any unlawful conduct.  *See* Docket Item 81 at ¶¶ 24-35.  Because Sam does not allege that the individual defendants are liable except through the acts of Cohen & Slamowitz, the Court refers to the C&S-affiliated defendants collectively as "C&S."

On May 12, 2020, C&S moved to dismiss the second amended complaint on the ground that Sam's claims are time barred.  Docket Item 83.  On May 26, 2020, Sam responded to C&S's motion to dismiss, Docket Item 84, and on June 2, 2020, C&S replied, Docket Item 86.  In the meantime, on June 1, 2020, the case was referred to United States Magistrate Judge H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 85.   And on June 15, 2021, Judge Schroeder issued a Report, Recommendation and Order ("RR&O") finding that C&S's motion should be granted.  Docket Item 99.

On June 29, 2021, Sam objected to the RR&O, arguing that Sam is entitled to relief from the limitations period either due to equitable tolling or under a fraud-based discovery rule and that his claims therefore are timely.  *See* Docket Item 100.  On July 20, 2021, C&S responded to Sam's objection, Docket Item 102, and on August 7, 2021, Sam replied, Docket Item 105.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the RR&O; the record in this case; the objection, response, and reply; and the materials submitted to Judge Schroeder.  Based on that *de novo* review, the Court accepts and adopts Judge Schroeder's recommendation to grant C&S's motion to dismiss but grants Sam's request for leave to amend.

**FACTUAL BACKGROUND**

I.      **C&S'S SUIT AGAINST SAM**

C&S is a limited liability partnership that Sam alleges "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due to another."[3] Docket Item 81 at ¶¶ 21-22.  "[F]or a substantially large number" of debt-collection cases filed by C&S between the late 1990s and 2006, C&S "used a process serving company [that] engaged in 'sewer service.'"[4]  *Id.* at ¶ 122.  As a result of C&S's use of "sewer service," a "substantially large number" of those debt-collection actions "resulted in [] default judgment."  *Id.*  Although Sam alleges that "C&S knew or should have known about this 'sewer service'" issue "no later than sometime in 2006 as a result of a lawsuit filed against it," C&S "left these judgments in place and [] collected on these default judgments and attempted to enforce" them.  *Id.*

On January 10, 2007, C&S "commenced a consumer collection lawsuit against Sam on behalf of Midland Funding, LLC," in Dunkirk City Court, Chautauqua County.  *Id.* at ¶ 46.  The suit sought to collect on a credit card debt allegedly owed by Sam.  *Id.* at ¶ 47.  Although an affidavit of service was filed in that case, *see* Docket Item 81-1,[5]

---

[3] The Court assumes the reader's familiarity with the facts alleged in the second amended complaint, *see* Docket Item 81, and Judge Schroeder's analysis in the RR&O, *see* Docket Item 99.  Accordingly, the Court provides only a brief recitation of the facts relevant to Sam's objections.

[4] Sewer service is "the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service."  *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010).

[5] Sam has attached various documents to his second amended complaint, which the Court considers in this motion.  *See Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any statements or documents

3

Sam was "never [] served with the summons and complaint" and "knew nothing about the existence of the lawsuit" after it was filed, Docket Item 81 at ¶¶ 51-52.

Because Sam was never served, he never "submit[ted] a responsive pleading," and the Dunkirk City Court entered default judgment against him on March 27, 2007. *Id.* at ¶¶ 53, 72.  C&S took no further action to collect on Sam's alleged debt after the Dunkirk City Court entered default judgment.  *Id.* at ¶ 54.

In early 2014, the Midland entities terminated C&S as their attorney and hired Eltman, Eltman & Cooper, P.C. ("Eltman").  *Id.* at ¶¶ 85, 91.  Eltman then issued an income execution on April 21, 2014, seeking to collect on the Dunkirk City Court default judgment.  *Id.* at ¶ 97.  Sam first learned about the Dunkirk City Court action when he received that income execution on April 30, 2014.  *Id.* at ¶ 175.

Soon after receiving the income execution, Sam asked the Dunkirk City Court "to vacate the [default] judgment and dismiss the case."  *Id.* at ¶ 56.  In connection with that request, Sam submitted an affidavit in which he asserted that he could not have been personally served because "[a]t the time, [he] was at home and bedridden with a severe back injury" and it therefore "would not have been physically possible for [him] to [answer] the door."  Docket Item 81-7 at 4.  Sam also stated that "[t]he description on the affidavit of service [did] not match [his] description," as Sam weighed 40 to 100 pounds more than the individual described in the affidavit of service.  *Id.* at 5.  After receiving Sam's affidavit, Eltman and Sam stipulated to vacate the default judgment and discontinued the action.  Docket Item 81 at ¶ 57.

---

incorporated in it by reference." (alterations, citation, and internal quotation marks omitted)).

## II.    THE SECOND CIRCUIT'S DECISION IN *HESS*

On February 23, 2011, the Second Circuit decided *Hess v. Cohen & Slamowitz*

*LLP*, 637 F.3d 117 (2d Cir. 2011).  In *Hess*, the Second Circuit considered the reach of

the FDCPA's venue provision, which requires that debt collectors file suit against

consumers "only in the judicial district or similar legal entity" where the "consumer

signed the contract sued upon" or where the consumer "resides at the commencement

of the action."  *Id.* at 120 (quoting 15 U.S.C. § 1692i).

C&S, also the debt-collector in *Hess*, had filed suit in Syracuse City Court to

collect a debt owed by Hess, a resident of Clay, New York.[6]  *Id.* at 119.  Under section

213 of the New York Uniform City Court Act ("UCCA"), city courts can hear cases in

which "either a plaintiff or a defendant [is] a resident of the city or of a town contiguous

to such city, provided that such town is (i) within the same county, and (ii) contiguous to

the city by land."[7]  *Id.* at 122 (quoting UCCA § 213(a)). Clay and Syracuse are both in

Onondaga County, but Clay is not contiguous to Syracuse by land.  *Id.* at 119.  Hess

therefore moved to dismiss the debt-collection action on the ground that it violated

section 213 of the UCCA, and the Syracuse City Court dismissed the case.  *Id.*

---

[6] Only Cohen & Slamowitz, not any of its individual attorneys, was a party in *Hess*.  *See* 637 F.3d at 117.  For ease of reference, and because the individual attorney defendants in this case are not alleged to have engaged in any independent conduct, *see supra* at 1 n.2, the Court likewise refers to the defendant in *Hess* as "C&S."

[7] Under section 213, city courts also can hear cases in which a plaintiff or a defendant "ha[s] regular employment within the city" or "ha[s] a place for the regular transaction of business within the city."  *Hess*, 637 F.3d at 122 (quoting UCCA § 213(a)).  Those provisions were not at issue in *Hess*, and Sam alleges that he did not have regular employment or a place for the regular of transaction of business within Dunkirk when C&S filed the Dunkirk City Court action in 2007.  Docket Item 81 at ¶ 61.

Hess then sued C&S in federal court, "alleging that [C&S] violated the FDCPA's venue provisions by suing him in a judicial district in which he did not reside." *Id.* The district court granted C&S's motion to dismiss, finding that "the FDCPA's term 'judicial district' meant 'county.'" *Id.* at 119-20. Because C&S had filed suit in a court in Onondaga County, which contains both Syracuse and Clay, the district court concluded that C&S had not violated the FDCPA's venue provisions. *See Hess v. Cohen & Slamowitz, LLP*, 2010 WL 60322, at *2 (N.D.N.Y. Jan. 7, 2010).

On appeal, the Second Circuit reversed. The court found that where "a state law outlines the required nexus between the residence or activities of the consumer and the location of the court"—such as section 213 of the UCCA—that "law sets forth the appropriate 'judicial district'" under the FDCPA's venue provisions. *Hess*, 637 F.3d at 124. By filing in Syracuse City Court, C&S had sued in a court that "lack[ed] power to hear the action" under state law. *Id.* at 119. Therefore, C&S had filed the debt-collection action outside the relevant "judicial district" under the FDCPA, and the Second Circuit held that Hess had alleged a violation of the FDCPA's venue provisions. *Id.* at 127.

## III.   SAM'S SUIT AGAINST C&S

After receiving the income execution, Sam sued C&S and other defendants in July 2014. Docket Item 81 at ¶ 188; *see also Sam v. Cohen & Slamowitz, LLP*, No. 14-CV-611 (W.D.N.Y. July 29, 2014), Docket Item 1.[8] He alleged that C&S had violated

---

[8] Case number 14-CV-611 was consolidated with case number 15-CV-1081 on February 5, 2016. *See Sam v. Cohen & Slamowitz, LLP*, No. 14-CV-611 (W.D.N.Y. Feb. 5, 2016), Docket Item 30. That case was consolidated with this action on September 11, 2019. *See* Docket Item 66.

the FDCPA's venue provisions by bringing the debt-collection action in Dunkirk City Court even though Sam resided in Westfield, which is not contiguous by land to Dunkirk. *Id.* at ¶¶ 60, 64, 188. C&S then moved for judgment on the pleadings on the ground that Sam's claims were time barred by the FDCPA's one-year statute of limitations. *Id.* at ¶¶ 191-92; *see also Sam v. Cohen & Slamowitz*, *LLP*, 2015 WL 114076, at *2 (W.D.N.Y. Jan. 8, 2015).

United States District Judge John T. Curtin, to whom this case was assigned at the time, denied C&S's motion. *Sam*, 2015 WL 114076, at *5. Judge Curtin first addressed whether the "discovery rule," which delays the date that a claim accrues until a "plaintiff 'discovers, or with due diligence should have discovered, the injury that is the basis of the litigation,'" applies to the FDCPA. *Id.* at *3 (quoting *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007)). Finding an absence of "controlling higher court authority" on that question, Judge Curtin concluded that the discovery rule was available under the FDCPA. *Id.* at *3-5. Because Sam received notice of the Dunkirk City Court action only after he received the income execution in April 2014 and filed suit within a year after that, Judge Curtin found that his claims were timely. *Id.* at *5.

In 2019, the Supreme Court provided the "controlling higher court authority" that Judge Curtin had been looking for and held that the discovery rule did not apply to the FDCPA. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019). The Court concluded that "[t]he FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened," *id.* at 360, but left open the question of whether a narrower, fraud-specific discovery rule might apply, *id.* at 361 n.3.

7

Sam filed a second amended complaint on April 28, 2020.  Docket Item 81.  In the second amended complaint, Sam alleged that C&S violated the FDCPA when it "fail[ed] to conduct [a] meaningful review" or "vacate the default judgment" against Sam after the Second Circuit's decision in *Hess*.  *See id.* at ¶¶ 200-01.  Sam also alleged that C&S violated the FDCPA when C&S signed and delivered the consent to change attorney form to Eltman without informing Eltman of the alleged venue issue in the Dunkirk City Court action.  *Id.* at ¶¶ 218-24.

C&S moved to dismiss, arguing that Sam's claims were untimely under *Rotkiske*.  *See* Docket Item 83.  Sam opposed that motion on the ground that his claims were timely under either equitable tolling or a fraud-based discovery rule.  *See* Docket Item 84.

## LEGAL PRINCIPLES

To survive a motion to dismiss, a complaint must include sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Conn. Gen. Life Ins. Co. v. BioHealth Labs, Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021).

## DISCUSSION

### I.    THE EFFECT OF THE SECOND AMENDED COMPLAINT

Sam first contends that the RR&O "ignore[d] the presumption of validity of the Second Amended Complaint" that purportedly attached when this Court granted Sam's unopposed motion to file the second amended complaint.  *See* Docket Item 100 at 7. Sam argues that "[i]n granting that relief"—that is, giving Sam leave to amend his complaint—this Court "necessarily determined that the pleading would be sufficient to withstand a motion to dismiss."  *Id.* at 3.

9

The authority for this proposition is, perhaps unsurprisingly, missing from Sam's objection. Although "a motion for leave to amend a complaint *may* be denied when amendment would be futile," *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (emphasis added), the converse has no legal support—at least that this Court can find. So while a court may deny a motion for leave to amend where "the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)," *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002), that does not mean that granting a motion to amend protects a complaint from a later motion to dismiss. To the extent that Sam's cursory, citation-free attempt to rewrite the Federal Rules of Civil Procedure is a properly raised objection to the RR&O,[9] it is without merit.

## II.    THE TIMELINESS OF SAM'S FDCPA CLAIM

More substantively, Sam objects to the RR&O on the ground that the second amended complaint sufficiently alleges that C&S engaged in a "decade-long scheme to defraud both consumers and the [c]ourts." Docket Item 100 at 10. Even if the second amended complaint does not "allege a fraudulent scheme between [C&S] and [the] *particular* process server" from the Dunkirk City Court action, Sam reasons, these allegations are sufficient to establish that his claim is not time barred through the application of either equitable tolling or a fraud-based discovery rule.[10]  *Id.* (emphasis in

---

[9] As the First Circuit has observed, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

[10] Although Sam argues that his claims are not time barred under either or both of these doctrines, it is not clear that either applies to the FDCPA in the first instance: The Supreme Court left that question open in *Rotkiske*, *see* 140 S. Ct. at 361 n.3, and the Second Circuit has not resolved whether equitable tolling based on fraudulent concealment applies to the FDCPA, *see Evans v. Select Portfolio Servicing, Inc.*, 2020

original).   In response, C&S argues that the RR&O fully considered the allegations in the second amended complaint, found them lacking, and therefore dismissed Sam's FDCPA claim.  *See* Docket Item 102 at 6-7.

It is not entirely clear when Sam contends that his FDCPA claim accrued and therefore why it is not time barred.  He may be arguing that his claim is timely because it accrued in 2014 (when Sam received the income execution and thereby discovered the existence of the Dunkirk City Court action).  On the other hand, he may be arguing that it accrued in 2011 (when the Second Circuit decided *Hess* and thus allegedly imposed a duty on C&S to review or vacate its default judgment against Sam) but that he is entitled to equitable tolling due to C&S's fraudulent concealment.[11]  The lack of clarity is understandable: the "two doctrines" that Sam invokes to save his otherwise-untimely claims—equitable tolling and a fraud-based discovery rule—"are often blended or confused."  *See Rotkiske*, 140 S. Ct. at 363 n.* (Ginsburg, J., dissenting); *see also SEC v. Gabelli*, 653 F.3d 49, 59 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013) (warning that conflating equitable tolling based on fraudulent concealment and the discovery rule is an "all-too-common mistake").

---

WL 5848619, at *8 (E.D.N.Y. Sept. 30, 2020).  Because there is no "controlling higher court authority," this Court, like Judge Curtin, assumes that both doctrines are available under the FDCPA.

[11] Sam does not object to the RR&O's conclusion that he "fail[ed] to allege a violation of the FDCPA" based on C&S's execution of the consent to change attorney form.  *See* Docket Item 99 at 16.  Accordingly, Sam's FDCPA claim against C&S for its "fail[ure] to conduct a meaningful review of its file prior to executing and sending" the consent to change attorney form, *see* Docket Item 81 at ¶¶ 218-24, will be dismissed unless Sam amends his complaint to allege that C&S had a duty to inform Eltman of the alleged venue violation.

But as Justice Ginsburg explained in *Rotkiske*, "[t]he fraud-based discovery rule has a thrust different from equitable tolling."  140 S. Ct. at 363 (Ginsburg, J., dissenting). "'Equitable tolling' describes a doctrine that pauses, or 'tolls,' a statutory limitations period after it has commenced"—that is, after the claim has accrued.  *Id.*  "[A] statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that:  (1) the defendant wrongfully concealed material facts relating to [the] defendant's wrongdoing; (2) the concealment prevented [the] plaintiff's discovery of the nature of the claim within the limitations period; and (3) [the] plaintiff exercised due diligence in pursuing the discovery of the claim during the period [the] plaintiff seeks to have tolled."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)).  To be entitled to tolling based on fraudulent concealment, "a plaintiff must either plausibly allege 'that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing.'"  *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (summary order) (quoting *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)).

Under a fraud-based discovery rule, on the other hand, "accrual is delayed 'until the plaintiff has discovered his cause of action.'"  *Gabelli*, 568 U.S. at 449 (internal quotation marks omitted) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010)). That is, "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered."  *Id.* (internal quotation marks omitted)

(quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).  Although the Supreme

Court in *Rotkiske* declined to read a *general* discovery rule into the FDCPA, the Court

did not resolve whether the FDCPA incorporated a more limited *fraud*-based discovery

rule of the sort that Sam urges here.  *See Rotkiske*, 140 S. Ct. at 361 n.3; *see also id.* at

362 (Sotomayor, J., concurring); *id.* at 363 (Ginsburg, J., dissenting).

While these two doctrines can be "blended or confused," they remain distinct.

Nevertheless, their niceties are largely academic here because Sam's arguments fail on

either score.

Sam contends that despite the RR&O's conclusion to the contrary, "the Second

Amended Complaint sufficiently alleges that [C&S] knew of[] and participated in[]" the

use of sewer service in debt-collection actions "at all times relevant to the actions

complained of."  Docket Item 100 at 10.  But the sum total of the allegations relating to

C&S's use of "sewer service" are that C&S used "a process serving company [that]

engaged in 'sewer service'" for a "substantially large number of files" and that "C&S

knew or should have known about" the sewer service "no later than sometime in 2006."

Docket Item 81 at ¶ 122.[12]   The second amended complaint does not allege that this

process server was the process server who served Sam or otherwise link its

generalized allegations of fraudulent service to this case.  Nor do Sam's objections to

the RR&O supply the missing connection between the process server identified in the

---

[12] Sam also alleges that "this issue with the aforementioned 'sewer service' and
these default judgments became public knowledge especially in the New York legal
community and more importantly the New York consumer debt collection industry" in
2011.  *See* Docket Item 81 at ¶ 123.  As Sam has already alleged that C&S knew or
should have known about "sewer service" problems in other cases by 2006, *see id.* at ¶
122, it is unclear what independent weight this allegation carries.

second amended complaint and Sam's claims; on the contrary, Sam suggests that he does not have to provide such a connection.  *See* Docket Item 100 at 10.

As the RR&O correctly concluded, the allegations in the second amended complaint fall well short of other cases where courts equitably tolled untimely FDCPA claims based on allegations that the defendants provided false affidavits or arranged for "sewer service" upon the plaintiffs themselves.  *See* Docket Item 99 at 12-15.  Sam's allegations that C&S employed bad process servers in *other* debt-collection cases thus do not make his claims in *this* case timely under either a fraud-based discovery rule or equitable tolling doctrine.  *See Gabelli*, 568 U.S. at 449 (fraud-based discovery rule applies "where a plaintiff has been *injured by fraud*" (emphasis added)); *Koch*, 699 F.3d at 157 (fraudulent concealment applies where "the defendant wrongfully concealed material facts relating to [the] defendant's wrongdoing").

Nor does C&S's alleged FDCPA venue violation itself suggest that C&S engaged in fraud or fraudulently concealed Sam's FDCPA claim.[13]  Sam argues that the FDCPA violation in 2007 "can be found to be affirmative steps taken by [C&S] to conceal the debt collection suit in order to obtain the fraudulent default judgment."  Docket Item 105 at 5; *see also* Docket Item 81 at ¶¶ 173-74 (alleging that C&S's violation of the FDCPA was "self-concealing").[14]  But even if that filing violated the FDCPA, it alone does not

---

[13] Sam did not raise this argument before Judge Schroeder, and the Court therefore need not consider it.  *See Al-Mohammedi v. City of Buffalo*, 2017 WL 163388, at *1 (W.D.N.Y. Jan. 17, 2017) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate." (alteration omitted) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988)).  Regardless, Sam's argument on this score fails for the reasons stated.

[14] Sam attaches a "consent order with the Consumer Finance Protection Bureau" to his reply brief, suggesting that the conduct alleged in the second amended complaint

entitle Sam to equitable tolling under the fraudulent concealment doctrine.  *See Gabelli*, 653 F.3d at 59-60 ("[T]he fraudulent concealment doctrine may be used to toll the limitations period for non-fraud claims where the plaintiff is able to establish that the defendant took affirmative steps *beyond the allegedly wrongful activity itself* to conceal her activity from the plaintiff." (emphasis added)).  And without alleging that C&S engaged in fraudulent service to secure the default judgment in Dunkirk City Court, Sam has not alleged facts that would warrant the application of a fraud-based discovery rule. *Cf. Rotkiske*, 140 S. Ct. at 365 (Ginsburg, J., dissenting) (finding fraud-based discovery rule applied where the plaintiff alleged that the defendant "intentionally serv[ed] process in a manner designed to prevent [the plaintiff] from learning of the collection suit . . . . in order to ensure that [the] suit would result in a default judgment").

Sam also argues that the RR&O "resolve[d] a disputed question of fact, *to wit*, whether the process server's affidavit indicating proper service is true."  *See* Docket Item 100 at 12.  But the RR&O did not determine that the affidavit was true; on the contrary, the RR&O "accept[ed] [the] plaintiff's allegation that he was not aware of the Dunkirk City Court action until he received the income execution dated April 24, 2014," Docket Item 99 at 14.  The RR&O instead concluded that even accepting Sam's attached 2014 affidavit as true, Sam did not allege that C&S engaged in any fraudulent conduct or concealment with respect to the affidavit of service filed in the 2007 debt-collection lawsuit.  *See id.* at 14-15.

---

"is the exact type of conduct" that formed the basis for the consent decree.  Docket Item 105 at 5; Docket Item 105-1.  "The Court does not rely on factual assertions made for the first time in [a p]laintiff's opposition brief," however, and declines to consider any alleged effect of the consent decree.  *Troy v. City of New York*, 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014).

For all those reasons, the RR&O correctly concluded that Sam's FDCPA claim was barred by the statute of limitations and not saved by either equitable tolling or a fraud-based discovery rule. Nevertheless, the Court grants Sam's request for leave to amend his complaint to demonstrate that his claims are not time barred. *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).").

### III.     SAM'S REMAINING STATE LAW CLAIMS

Without a timely FDCPA claim, Sam's claims against C&S all arise under New York law. *See* Docket Item 81 at ¶¶ 202-09 (New York General Business Law § 349), ¶¶ 210-16 (New York Judiciary Law § 487). A "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity[]' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 450 (1988)). And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at 350 n.7).

Although Judge Schroeder recommends that the Court dismiss Sam's state law claims as untimely, *see* Docket Item 99 at 16-18, the Court need not wade into New York law at this time, and it therefore declines to do so. If Sam does not amend his

complaint to correct the deficiencies outlined above, the Court will decline to exercise supplemental jurisdiction over Sam's remaining state law claims.

### CONCLUSION

For the reasons stated above and in the RR&O, C&S's motion to dismiss, Docket Item 83, will be granted unless **within 30 days of the date of this order,** Sam amends his complaint to correct the deficiencies addressed above.  If Sam does not amend his complaint within that time, the complaint will be dismissed without further order and the Clerk of the Court shall close the case.

SO ORDERED.

Dated:       October 13, 2021
             Buffalo, New York

                              /s/ *Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE